## ENJOINING IMPROVEMENT OF DITCH WITH INADEQUATE OUTLET.

Circuit Court of Fairfield County.

JOHN LOVE v. JACOB SIMON ET AL.

Decided, September 18, 1908.

*Ditches—Improvement of Joint County Ditch—For Purpose of Afford-*
*ing a More Adequate Outlet for Lateral Ditches—Jurisdiction of*
*County Commissioners—Assessment of the Cost—Flooding the*
*Lands of a Lower Owner—Injunction.*

1. Neither county commissioners nor individuals have any right to collect water and by turning it into a ditch with an insufficient outlet cause an overflow of the lands of a lower owner, and an injunction will lie against a ditch improvement where the testimony warrants the conclusion that such a result will ensue.

2. While the improvement of a joint county ditch may not be effected by proceedings for the establishment of a ditch wholly within the county, yet a joint county ditch may be widened and deepened by the commissioners of one of the abutting counties, where the purpose is to provide a more adequate outlet for streams emptying therein, and the cost of such an improvement may properly be assessed upon those most benefited thereby.

*William Davidson,* for plaintiff.
*C. A. Radcliffe* and *Moore & Moore,* contra.

TAGGART, J.; DONAHUE, J., and CRAINE, J., concur.

Heard on appeal.

The case of John Love v. Jacob Simon et al. (the Board of County Commissioners of Fairfield County, Ohio) is a petition for injunction. The plaintiff says he is the owner of certain property consisting of about 175 acres in Perry county, Ohio; that these premises lie partly on the eastern terminus of a proposed county ditch that was petitioned for by Maggie Miller and others. The further averment is made that the eastern terminus of this ditch is in an alleged joint county ditch which had been attempted to be established and located some seventeen years ago between the counties of Fairfield and Perry. The petition further avers that in consequence of the location and estab-

lishment of the proposed ditch and that if the same is estab-
lished as proposed, more water in times of flood will be pre-
cipitated into the said joint county ditch than the same is
capable of carrying away, there being several ditches uniting at
or near the said eastern terminus of said proposed ditch, and
that in consequence of bringing the water to this point near the
eastern terminus of the proposed ditch that the plaintiff's said
lands will be flooded to a greater extent, and he will be injured
in consequence of the establishment of the proposed ditch.    He
further avers that the defendants, the county commissioners of
Fairfield county, utterly regardless of their absolute want of
jurisdiction to widen, deepen, straighten and clean out said
joint county ditch, and the part thereof lying in Perry county,
Ohio, and regardless of the rights of others owning land in
Perry county, along the line of this ditch, threaten to and unless
restrained will proceed to construct said proposed county ditch
and throw the surplus water upon the lands of this plaintiff, to
his great damage and irreparable injury and against which this
plaintiff has no adequate remedy at law.

In brief it is the claim of the plaintiff in this case that some
seventeen years ago the commissioners of Fairfield and Perry
counties sought to establish a joint county ditch, extending from
Perry county westward into a portion of Fairfield county; that
near the western terminus of this ditch is the confluence or meet-
ing of a county line ditch (the Love ditch as it is often desig-
nated) and another ditch extending from the south, there being
three streams of water—water-courses or ditches near the west-
ern terminus of this joint county ditch.

It is claimed that no notice was given to the commissioners
of Perry county of the proposed action, and, secondly, that
there is no adequate outlet furnished for the proposed improve-
ment.    This case was heard in the common pleas court and
judgment entered therein, and an appeal taken to this court.

Several things are clearly established by the testimony in
this case:

1st.    The entire watershed or territory sought to be drained
by this improvement is the same as has been drained into this

joint county ditch for many years—certainly more than seventeen or eighteen years; that is to say, the testimony does not show that any new territory is brought in, but only the natural watershed which has always drained eastward.

2d.    That during the years last past there has been drainage of this territory, that has not been under the provisions of the ditch law, but it has been by individual effort of the various land owners; it has not been entirely systematic; yet it has been so concurrent that much of the water of this watershed reached the point which would have been the outlet of the eastern terminus of the proposed ditch.

3d.    The attempted location of this joint county ditch some fifteen years ago, while it may not have been under the forms of law, and while it might be that it could not be put through under the present ruling of the Supreme Court, yet it was attempted and the order was made by the joint board of county commissioners of the two counties, that the creek which was the head waters of Rushcreek was straightened, and was intended to furnish an outlet for the confluence of the streams that were turned into it at its western terminus.

4th.    It does appear clearly from the testimony that the plaintiff's lands before this attempted location of the joint county ditch were overflowed and overflowed to a very considerable extent.

5th.    It also appears that since that time the plaintiff's lands have been overflowed.

Now this suit is brought to enjoin this proposed improvement on the ground principally that there is not sufficient outlet under the law as required to be found by the commissioners. And, secondly, that great and irreparable injury will be done to the plaintiff by the concentration of the waters at this point of the confluence of those streams and projecting of them down and over his land.

If the testimony in this case would establish either of these propositions, the court are unanimous in the opinion that it would have full right and authority to enjoin this improvement. It is a jurisdictional fact that must be determined by the commis-

sioners that there is a sufficient outlet for a ditch before it can be established. And we take it, that it is a matter of law that neither the commissioners of a county nor individuals have a right by the industry of man to gather together waters and project them down on and over the lands of an owner lying below a proposed improvement to his injury and damage, for that is *pro tanto* an appropriation of his land, and unless he receives compensation therefor it is violative of the Constitution of the state.

The testimony in respect to the question of outlet is somewhat in conflict. If we look to the cross-sections of this stream and to the profile that is presented in this case, showing the bottom of this ditch and the grade of the bottom of this ditch, we might be constrained to hold that the commissioners could not under such a showing have established this ditch with a sufficient outlet. If we look to the testimony of the witnesses in the case, we have a division of opinion in that respect; certain of the witnesses who are property owners and have an opinion concerning the action of the waters at the western terminus of the joint county ditch say that this joint county ditch or Rushcreek is wholly inadequate to receive the waters from these three streams that are now meeting there, and if the new ditch is established the outlet is wholly inadequate. We have the commissioners of the county, who have investigated this matter and in whom is reposed the duty of determining whether a sufficient outlet is provided; they say that they found a sufficient outlet for the proposed ditch. The engineer in charge on whom the law puts the duty of laying out this improvement says that a sufficient outlet is provided. So that with this divided sentiment in respect of the improvement we can not say that the preponderance of the evidence is with the plaintiff upon this proposition. There is as much testimony here and as satisfactory evidence that there is a proper and sufficient outlet, as that they have failed to provide a sufficient outlet.

Now the next proposition—the equitable proposition that the plaintiff has the right to be protected from an increased flow of water down and over his lands. We have the testimony in this

case and we think the great weight of the testimony ·is that the drainage for years back has been better along the line of this watershed than it is now; we think that by the concurrent act of the land owners they had practically the same drainage as is sought to be given by this proposed improvement; we think by the drainage going on for years and acquiesced in by the plaintiff, that the plaintiff received the same amount of water formerly and the same watershed was projected upon his land as will be projected by the proposed improvement.   The engineer says that no greater amount of water will come down upon his lands than came before.   This is also the opinion· of the owners of the land affected. by the improvement.

While the improvement of the joint county ditch may not be made by proceedings to establish a ditch, yet it can certainly be improved.   We do not understand the Supreme Court to say that a water-course can not be widened, straightened or deepened. If it can be widened and deepened to furnish a more adequate outlet for the benefit of those three streams, the cost of that improvement may be assessed upon those most benefited thereby, rather than that the court should use the drastic and extraordinary writ of injunction.

So that taking all these things into consideration, we think that the judgment in this case ought to be for the defendants, and that the petition of the plaintiff should be dismissed with costs; exceptions will be noted on behalf of plaintiff; motion for a new trial may be filed and overruled; the statutory time will be allowed for bill of exceptions; and twenty days will be allowed for findings of fact, and if that can not be agreed upon. submit it to us and we will settle it.